**Exhibit B**

**DEED OF TRUST**

**2017-056121**
RECORDED
**12/27/2017 12:21 PM**

████████████████████

0034301520170056121020280287
CHRIS YAMAMOTO
CANYON COUNTY RECORDER
Pgs=28  MBROWN                    $45.00
MTG D OF T
DA CAPITAL INVESTMENTS LLC

Recording requested by,
and after recording, return to:

DA Capital Investments, LLC
c/o Douglas R. Brasher
3059 S. Bear Claw Place
Meridian, Idaho 83642

ADA COUNTY RECORDER Christopher D  Rich         **2017-123413**
BOISE IDAHO    Pgs=28  LISA BATT        **12/27/2017 02:21 PM**
DA CAPITAL INVESTMENTS LLC              AMOUNT:$45.00

||||||||||||||||||||||||||||||||||||||||
0044731520170123413020280283

APN:  Lot 1: Canyon County  R35345-000
      Lot 2: Ada County  R1097050120
      Lot 3: Ada County  R1523650110

--------------------------------------------------------------------
(SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY)

### DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT, AND FIXTURE FILING

Trustor, collectively:          C.A.R.S. Enterprises, Inc.
                                Ryan W. Hawkes
                                Curtis D. Grieve

Trustee:

Beneficiary:                    DA Capital Investments, LLC
                                an Idaho limited liability company

Property Tax Parcel Number:     Lot 1: Canyon County,  R35345-000
                                Lot 2: Ada County,  R1097050120
                                Lot 3: Ada County,  R1523650110

For purposes of Article 9 of the Idaho Uniform Commercial Code, this Security Instrument constitutes a Security Agreement and Financing Statement with Trustor being the Debtor and Beneficiary being the Secured Party. This Security Instrument shall also constitute a Financing Statement filed as a fixture filing pursuant to Article 9 of the Idaho Uniform Commercial Code.

Exhibit B, Page 1

THIS **DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING** (this "Security Instrument") is made as of the _25_ day of May, 2017, by C.A.R.S. ENTERPRISES, INC., an Idaho limited liability company, having an address of 9393 Fairview Avenue, Boise ID 83704 ("C.A.R.S."), Ryan W. Hawkes, an individual resident of Ada County, Idaho ("Hawkes"), and Curtis D. Grieve, an individual resident of Ada County, Idaho ("Grieve"), as trusFirst American Title Company, an Idaho title company, as trustee ("Trustee"), having an address of 738 Sout Bridge Way Place suite 150, Eagle, ID 83616, for the benefit of DA Capital Investments, LLC, an Idaho limited liability company, having an address of 3059 S. Bear Claw Place, Meridian, ID 83642, as beneficiary ("Lender")

## RECITALS:

A.      Pursuant to that certain Loan Agreement, dated as of the date hereof (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Loan Agreement"), by and among C.A.R.S. and Lender, Lender has agreed to make a loan in the principal amount of TWO MILLION EIGHT HUNDRED THOUSAND DOLLARS and no/100 ($2,800,000.00) (the "Loan"); and

B.      Pursuant to a certain Promissory Note, dated as of the date hereof (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Note"), executed by C.A.R.S. in favor of Lender, C.A.R.S. has agreed to repay to Lender the amount of the Loan plus certain interest and expenses; and

C.      Pursuant to that certain Indemnity and Guaranty Agreement, dated as of the date hereof (as amended, restated, replaced, supplemented or otherwise modified from time to time, the "Guaranty"), executed by Hawkes and Grieve in favor of Lender, Hawkes and Greive have agreed to guaranty repayment of the Loan as additional security to induce Lender to enter into the Loan Agreement; and

D.      This Security Instrument, the Note, the Stock Pledge, the Guaranty, and any of the other documents evidencing or securing the Loan, as amended, supplemented or otherwise modified from time to time, are each referred to as a "Loan Document" and are collectively referred to as the "Loan Documents".

**NOW, THEREFORE**, Trustor, in consideration of the Indebtedness (as hereinafter defined), the Other Obligations (as hereinafter defined) and the trust created by this Security Instrument, irrevocably grants, conveys and assigns to Trustee, in trust, with power of sale, Trustor's interest in the Pledged Property described on **Exhibit A** attached to this Security Instrument.

**TO SECURE TO LENDER**, its successors and assigns, the repayment of the Indebtedness, and all renewals, extensions and modifications of the Indebtedness, together with the Other Obligations, including without limitation the payment of all sums advanced by or on behalf of Lender to protect the security of this Security Instrument, and the performance of the covenants and agreements of the Borrowers contained in the Loan Documents.

For purposes of Idaho Code § 45-15-1502, et seq., Trustor agrees that all default interest, late charges, Prepayment Premiums, and similar amounts, if any, owing from time to time under the Note, this Security Instrument, and other Loan Documents shall constitute a part of and be entitled to the benefits of Lender's lien upon the Pledged Property and Lender may add all such amounts to the principal balance of the Note, in its sole discretion, and Lender may include such amounts in any credit which Lender may make against its bid at a foreclosure sale of the Pledged Property pursuant to this Security Instrument.

Trustor represents and warrants that Trustor is lawfully seized of the Pledged Property and has the right, power and authority to grant, convey and assign the Pledged Property, and that, other than the Permitted Exceptions the Pledged Property is unencumbered. Trustor covenants that Trustor will warrant and defend generally the title to the Pledged Property against all claims and demands, subject to the Permitted Exceptions.

1. **DEFINITIONS; RECITALS.** Certain terms used in this Security Instrument are defined below and certain other terms used in this Security Instrument are defined elsewhere in this Security Instrument. All recitals to this Security Instrument are hereby incorporated by reference as if expressly set forth herein.

    1.1. "Business Day" means any day that is not a Saturday, Sunday or other day on which commercial banks in Idaho are authorized or required by law to remain closed.

    1.2. "Default" means the occurrence of any event, circumstance or condition which constitutes a breach of or a default under any Loan Document and which, after the giving of any required notice and/or the passage of any applicable cure period, would constitute an Event of Default under the Security Instrument or any other Loan Document.

    1.3. "Default Rate" means a rate per annum equal to the lesser of (i) ten percent (10%) over the interest rate payable under the Note, or (ii) the maximum rate of interest permitted to be charged by applicable laws or regulation governing this Security Instrument until paid, such additional interest to be compounded monthly.

    1.4. "Event of Default" means the occurrence of any "Event of Default" as defined in the Note, regardless of the cause thereof, or the circumstances giving rise thereto.

    1.5. "Fixtures" has the meaning given to such term in the definition of "Pledged Property".

    1.6. "Improvements" has the meaning given to such term in the definition of "Pledged Property."

    1.7. "Indebtedness" means all present and future indebtedness evidenced by or arising under the Note or under any other Loan Document, together with interest thereon

and all other sums due to Lender in respect of the Loan under any Loan Document (including sums added to the principal balance of the Loan in accordance with the terms of any Loan Document, all Protective Advances, Prepayment Premiums, Past Due Charges, and all other charges, fees, reasonable out of pocket costs and expenses payable pursuant to any Loan Document).

1.8.  "<u>Leases</u>" means all leases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Trustor (or any predecessor of Trustor, to the extent Trustor or the Pledged Property (hereinafter defined) remain subject thereto), whether made before or after the filing by or against Trustor of any petition for relief under 11 U.S.C. § 101 et seq., as the same may be amended from time to time (the "<u>Bankruptcy Code</u>"), demising, leasing or granting rights of possession or use of all or any portion of the Pledged Property, together with all modifications, extensions or renewals thereof now existing or hereafter permitted under the Loan Documents.

1.9.  "<u>Loan Document</u>" and "<u>Loan Documents</u>" have the meaning given to such terms in the recitals above.

1.10.  "<u>Maturity Date</u>" has the meaning given in the Note.

1.11.  "<u>Pledged Property</u>" means all of Trustor's right, title and interest in: the real property described on **Exhibit A** attached hereto and incorporated herein by reference, together with all buildings and other improvements ("<u>Improvements</u>") now or hereafter located thereon, and any and all right, title or interest in any other real property or improvements comprised in such real property, which right, title or interest is acquired by Trustor after the date of this Security Instrument (such real property, buildings, other Improvements and after-acquired interest being hereinafter collectively referred to as the "<u>Real Property</u>"); the Personal Property; all development rights transferred or appurtenant to the Real Property, all easements and other rights now or hereafter made appurtenant to the Real Property; all additions and accretions to the Real Property; all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Real Property in which Trustor has an interest (the "<u>Fixtures</u>"); all inventory and movable equipment and furniture located on or used in the Trustor's business; all rights in or to existing or future streets or public places; all existing and future minerals, oil, gas and other hydrocarbon substances upon, under or through the Real Property; all water and water rights, pumps and pumping plants, and existing and future water stock relating thereto; all existing and future shares of stock or other evidence of ownership of any part of the foregoing property and all intangible property and rights relating to the foregoing property, or the operation thereof or used in connection therewith, including all options, sales contracts and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements, and those funds escrowed pursuant to that certain Collateral Reserve Escrow created on or about the date hereof by and between Trustor, Lender and the Escrow Agent, and all proceeds of any of the foregoing.  Any reference in this

Security Instrument to the "<u>Pledged Property</u>" shall mean the Pledged Property described in this Section, any part thereof, or any interest therein.

1.12. "<u>Obligations</u>" means the Indebtedness and the Other Obligations, collectively.

1.13. "<u>Other Obligations</u>" means the performance of all obligations (other than payment of the Indebtedness) of the Borrowers under any of the Loan Documents.

1.14. "<u>Permitted Discretion</u>" means a determination or judgment made in good faith in the exercise of reasonable (from the perspective of a secured lender) credit or business judgment.

1.15. "<u>Permitted Exceptions</u>" means and all liens and encumbrances of record.

1.16. "<u>Person</u>" means any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

1.17. "<u>Personal Property</u>" means all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Trustor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Real Property (whether or not subsequently removed from the Real Property (other than that portion of the Pledged Property consisting of the Real Property)), including, without limitation, all (i) machinery and tools; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, storm windows, storm doors, venetian blinds, curtains, and curtain rods; (iv) mirrors, lamps, chandeliers and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) systems and equipment for the purpose of supplying or distributing heating, cooling, electricity, gas, water, air, or light, potted plants, heating, lighting and plumbing fixtures, fire detection, prevention and extinguishing apparatus, elevators, escalators, fittings, plants, apparatus, water heaters, stoves, ranges, refrigerators, microwave ovens, tools, machinery, engines, dynamos, motors, boilers, incinerators, conduits, compressors, brackets, electrical signs, bulbs, bells, fuel, conveyors, cabinets, lockers, shelving, dishwashers, garbage disposals, laundry machines, washers and dryers, telephone systems and equipment, exercise equipment, security and access control systems and apparatuses; (viii) beds, bureaus, chiffoniers, chests, chairs, desks, mirrors, bookcases, tables, screens, paintings, hangings, pictures, objects of art, divans, couches, luggage carts, luggage racks, stools, sofas, chinaware, linens, pillows, blankets,

glassware, food carts, cookware, dry cleaning facilities, dining room wagons, keys or other entry systems, bars, bar fixtures, liquor and other drink dispensers, icemakers, radios, television sets, intercom and paging equipment, electric and electronic equipment, dictating equipment, private telephone systems, facsimile machines, medical equipment, switchboards, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, and other customary hotel equipment; (ix) rights, royalties, Rents, Rooms Revenues, security deposits, advance rentals, revenues, profits and benefits, credit card receipts collected from guest rooms, restaurants, bars, meeting rooms, banquet rooms and recreational facilities and parking charges, the rendering of services by Trustor or any operator or manager of a hotel or the commercial space located in the Improvements or acquired from others (including, without limitation, from the rental of any office space, retail space, guest rooms or other space, halls, stores and offices, and deposits securing reservations of such space), license, lease, sublease, concession fees and rentals, health club membership fees, food and beverage wholesale and retail sales, service charges, vending machine sales and any other items of revenue, receipts and/or income as identified in the Uniform System of Accounts for Hotels, 10th Edition, International Association of Hospitality Accountants (2006), as from time to time amended); (x) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (xi) deposits, funds, money and deposit accounts; (xii) tenements, hereditaments and appurtenances; (xiii) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xiv) names under or by which the Pledged Property or any of the Improvements may at any time be operated or known and rights to carry on business under any such names or any variant thereof; (xv) trademarks, other intellectual property and good will, websites, URLs, blogs, and social network pages; (xvi) management agreements, service contracts, supply contracts or other contracts or agreements; (xvii) warranties; (xviii) water stock; (xix) shares of stock or other evidence of ownership of any part of the Pledged Property or Improvements that is owned by Trustor in common with others, and all documents of membership in any owners' or members' association or similar group having responsibility for managing, maintaining or operating any part of the Pledged Property or Improvements; (xx) plans and specifications prepared for construction of Improvements on the Pledged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Pledged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Trustor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Pledged Property; (xxi) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any Borrowers of any part of the Pledged Property and other proceeds of the sale thereof; (xxii) damages, royalties and revenue of every kind, nature and description whatsoever that Trustor may be entitled to receive from any person or entity owning or having or hereafter acquiring a right to the oil, gas or mineral rights and reservations of the Pledged Property; (xxiii) deposits made with or other security given to utility companies by Trustor with respect to the Pledged Property and/or Improvements; (xxiv) advance payments of insurance premiums made by Trustor

4818-6634-2472, v. 2

with respect to, and all claims or demands with respect to, insurance; (xxv) negotiable certificates of deposit of Trustor in Lender's possession and all accounts of Trustor maintained with Lender and each deposit account of Trustor assigned or pledged to Lender pursuant to any agreement; (xxvi) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xxvii) condemnation awards; (xxviii) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Pledged Property and/or Improvements or for any loss or diminution in value of the Pledged Property and/or Improvements; (xxix) books and records, including, without limitation, all computer records, computer tapes and electronic and electromagnetic representations and reproductions thereof;  (xxx) guaranties of and security for any of the foregoing; (xxxi) [intentionally omitted]; (xxxii) all substitutions, renewals, improvements, attachments, accessions, additions and replacements to any of the foregoing; and all "Proceeds" (as such term is defined in the Uniform Commercial Code), collections, insurance proceeds and products of any of the property listed in (i) through (xxxii) above, proceeds of any voluntary or involuntary disposition or claim respecting any part thereof (pursuant to judgment, condemnation award or otherwise) and all documents, instruments, general intangibles, goods, equipment, inventory, chattel paper, monies, accounts, deposit accounts and other personal property that may arise from the sale or disposition of any of the foregoing, all guaranties of and security for any of the foregoing, and all books and records, including, without limitation, all computer records, computer tapes and electronic and electromagnetic representations and reproductions thereof, relating to any of the foregoing.

1.18.  "Real Property" has the meaning given to such term in the definition of Pledged Property.

1.19.  "Rents" means all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Trustor, any Property Manager, any of their Affiliates, or any of their agents or employees, from any and all sources arising from or attributable to the Pledged Property, including all credit card receipts collected from tenants, parking charges, and other obligations now existing or hereafter arising or created out of the sale, lease, sublease, license, concession or other grant of the right of the use and occupancy of the Pledged Property, service charges, vending machine sales, laundry charges and any other items of revenue, receipts and/or income and proceeds, if any, from business interruption or other loss of income insurance, whether paid or accruing before or after the filing by or against Trustor of any petition for relief under the Bankruptcy Code.

1.20.  "Room Revenues" means revenues, income, fees, receivables, receipts, deposits, accounts, cash, issues, profits, charges for services  rendered, and any other payment and consideration of whatever form or nature received by or paid to or for the

4818-6634-2472, v. 2

account of Trustor, any Property Manager, any of their Affiliates, or any of their agents or employees, from any and all sources arising from or attributable to the Pledged Property, including but not limited to, the rental of lodging units, catering services, parking charges, service charges, vending machine sales, laundry charges and any other items of revenue, receipts and/or income and proceeds related thereto.

1.21. "Uniform Commercial Code" means the Uniform Commercial Code as enacted in the State of Idaho, as amended from time to time.

2. **ASSIGNMENT OF RENTS.** Trustor absolutely, unconditionally and irrevocably assigns to Lender, its successors and assigns, the Leases and the Rents. This assignment is an absolute and present assignment from Trustor to Lender and not merely the passing of a security interest. Notwithstanding the immediately preceding sentence, Lender confers upon Trustor the license to collect and retain the Rents as they become due and payable and otherwise deal with the Leases, subject, however, to the right of Lender to revoke such license at any time an Event of Default exists, in its sole discretion and without notice to Trustor. Lender shall have the absolute right to revoke such authority and collect and retain the Rents without taking possession of all or any part of the Pledged Property. The right to collect Rents herein provided shall not cause Lender to be a "mortgagee in possession" for any purpose, nor shall such right impose upon Lender the duty to produce Rents or maintain the Pledged Property in whole or in part. Possession of the Pledged Property by a receiver appointed by a court of competent jurisdiction shall not be considered possession of the Pledged Property by Lender for purposes hereof. During the existence of an Event of Default, Lender may apply, in its sole discretion and in any order of priority, any Rents collected against the reasonable out of pocket costs of collection and any Indebtedness arising under the Loan Documents. Collection of any Rents shall not cure or waive any Event of Default or notice of Event of Default, or invalidate any acts done pursuant to such notice.

3. **SECURITY AGREEMENT AND FIXTURE FILING.**

3.1. **Grant of Security Interest.** Trustor hereby grants to Lender, its successors and assigns, a security interest in the Personal Property to secure all of the Obligations. This Security Instrument constitutes a security agreement with respect to all personal property in which Lender is granted a security interest hereunder, and Lender shall have all of the rights and remedies of a secured party under the Uniform Commercial Code as well as all other rights and remedies available at law or in equity.

3.2. **Perfection.** Trustor will execute, acknowledge, deliver and cause to be recorded or filed, in the manner and place required by any present or future law, any instrument that may be requested by Lender in its Permitted Discretion to publish notice or protect, perfect, preserve, continue, extend, or maintain the security interest and lien, and the priority thereof, of this Security Instrument or the interest of Lender in the Pledged Property, including, without limitation, deeds of trust, security agreements, financing statements, continuation statements, and instruments of similar character, *provided, that,* Trustor shall not be obligated to amend this Security Instrument or any of the other Loan Documents to increase Trustor's liability or to increase Trustor's obligations under the Loan Documents, and, *provided further that,* Trustor shall pay or

4818-6634-2472, v. 2

cause to be paid (i) all filing and recording taxes and fees incident to each such filing or recording, (ii) all expenses, including without limitation, reasonable actual attorneys' fees and costs, incurred by Lender in connection with the preparation, execution, and acknowledgement of all such instruments, and (iii) all federal, state, county and municipal stamp taxes and other taxes, duties, imposts, assessments, and charges arising out of or in connection with the execution and delivery of such instruments.  Trustor hereby consents to, and hereby ratifies, the filing of any financing statements relating to the Loan made prior to the date hereof.  Trustor hereby irrevocably constitutes and appoints Lender as the attorney-in-fact of Trustor, to execute, deliver and, if appropriate, file with the appropriate filing officer or office any such instruments if Trustor should fail to do so within ten (10) days of written demand by Lender. In addition, Trustor irrevocably authorizes Lender to file such continuation statements and other similar documents as it determines, in its sole opinion, are appropriate to protect and perfect its rights under this Security Instrument.

3.3.    **Place of Business.**  Trustor maintains a place of business, as set forth as the address of Trustor in the first paragraph above the Recitals, and Trustor will notify Lender in writing of any change in its place of business within ten (10) days of such change.  Trustor is organized under the laws of the State of Idaho.

3.4.    **Fixtures.**  This Security Instrument is also to be recorded as a "fixture filing" in accordance with Idaho Code § 28-9-502, and covers goods that are or are to become Fixtures.

4.    <u>**COVENANTS**</u>.  Trustor covenants and agrees that:

4.1.    **Performance of Obligations.**  Trustor shall promptly pay when due the Indebtedness and shall perform and comply with in a timely manner all Other Obligations.

4.2.    **Title.**  Trustor warrants and represents that (a) Trustor lawfully holds fee simple title to the Real Property and title to all other Pledged Property and has the right to encumber the same; (b) the person executing this Security Instrument on behalf of Trustor has the full right, power and authority to do so on behalf of Trustor; (c) this Security Instrument, as so executed and delivered, is a valid and fully binding obligation of Trustor, enforceable in accordance with its terms · (except to the extent that enforceability may be affected or limited by applicable bankruptcy, insolvency and other similar debtor relief laws affecting the enforcement of creditors' rights generally); and (d) Trustor has reviewed, approved, and been fully advised with respect to this Security Instrument, the Loan, the Loan Documents, and any other document or instrument executed and delivered in connection therewith or as security therefor.

4.3.    **Incorporation by Reference.**  All the covenants, conditions and agreements contained in the Note and all and any of the other Loan Documents, to the extent applicable to Trustor or the Pledged Property, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.  In the event of any inconsistency between the provisions of this Security

Instrument or any of the other Loan Documents and the provisions of the Note, the provisions of the Note shall control.

    **4.4.** **Insurance.** Trustor shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Trustor and the Pledged Property as required by Lender, which insurance shall be consistent with insurance maintained for similar properties in the Boise, Idaho region of comparable quality and use.

    **4.5.** **Maintenance of Pledged Property.** Trustor shall cause the Pledged Property to be maintained in a good and safe condition and repair. The Improvements, the Fixtures and the Personal Property shall not be removed, demolished or materially altered without the consent of Lender, except for replacements of items of Personal Property in the ordinary course of business with items of Personal Property of similar utility and of equal or greater value. Trustor shall promptly repair, replace or rebuild any part of the Pledged Property which may be destroyed by any casualty or become damaged, worn or dilapidated or which may be affected by any condemnation.

    **4.6.** **Waste.** Trustor shall not commit or suffer any physical waste of the Pledged Property or make any change in the use of the Pledged Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Pledged Property, or take any action that is reasonably likely to invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way impair the value of the Pledged Property or the security of this Security Instrument. Trustor will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

    **4.7.** **Performance of Other Agreements.** Trustor shall observe and perform each and every term, covenant and provision to be observed or performed by Trustor pursuant to the any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Pledged Property and any amendments, modifications or changes thereto.

    **4.8.** **Change of Name, Identity or Structure.** Trustor shall not change Trustor's name, identity (including its trade name or names) or its structure as a corporation without notifying Lender of such change in writing at least thirty (30) days prior to the effective date of such change, without first obtaining the prior written consent of Lender. Trustor hereby authorizes, prior to or contemporaneously with the effective date of any such change, any financing statement or amendment to financing statement required by Lender to establish or maintain the validity, perfection and priority of the security interest granted herein. At the request of Lender, Trustor shall execute a certificate in form satisfactory to Lender in its Permitted Discretion listing the trade names under which Trustor intends to operate the Pledged Property, and representing and warranting that Trustor does business under no other trade name.

Exhibit B, Page 10

4.9.   **Mechanics Liens.**   If Lender or its title insurer determines that a preliminary notice has been filed in the State Construction Registry prior to the time of the recording of this Security Instrument, Trustor covenants and agrees to cause the lien claimant that filed such preliminary notice to withdraw the preliminary notice and Trustor shall provide to Lender written evidence acceptable to Lender and its title insurer that the lien claimant has accepted payment in full for construction services that the claimant furnished before the recording of this Security Instrument pursuant to Idaho law.

4.10.   **Contest of Liens.**   Trustor may contest any lien, encumbrance or other charge on the Pledged Property so long as Trustor previously records a notice of release of lien and substitution of alternate security as contemplated by Chapter 5 of Title 45 of the Idaho Statutes and otherwise complies with the requirements of that Chapter to release the Pledged Property from such lien or claim.  If Trustor shall fail to remove and discharge any such lien, encumbrance or charge, then, in addition to any other right or remedy of Lender, Lender may, but shall not be obligated to, discharge the same either by paying the amount claimed to be due or by procuring the release of the Pledged Property from the effect of such lien, encumbrance or charge by obtaining a bond in the name of and for the account Trustor of and recording a notice of release of lien and substitution of alternate security in the name of Trustor, each as contemplated by Chapter 5 of Title 45 of the Idaho Statutes or other applicable law, or otherwise by giving security for such claim.  Trustor shall, immediately upon demand therefor by Lender, pay to Lender an amount equal to all reasonable out of pocket costs and expenses incurred by Lender in connection with the exercise by Lender of the foregoing right to discharge any such lien, encumbrance or charge, including reasonable out of pocket costs of any bond or additional security, together with interest thereon from the date of such expenditure at the Default Rate.

5.   <u>**DEFAULT PROVISIONS.**</u>

5.1.   **Rights and Remedies.**   Upon the occurrence and during the continuance of an Event of Default (regardless of the pendency of any proceeding which has or might have the effect of preventing Trustor from complying with the terms of this Security Instrument), and in addition to such other rights as may be available under any other Loan Document or under applicable law, but subject at all times to any mandatory legal requirements:

5.1.1.   <u>Acceleration</u>.   Lender may declare the Indebtedness to be forthwith due and payable, whereupon the same shall become and be forthwith due and payable, without other notice or demand of any kind.

5.1.2.   <u>Uniform Commercial Code</u>.   Lender shall, with respect to the Personal Property, have all the rights, options and remedies of a secured party under the Uniform Commercial Code, including without limitation, the right to the possession of any such property or any part thereof, and the right to enter with legal process any premises where any such property may be found.  Any requirement of the Uniform Commercial Code for reasonable notification shall be met by mailing

written notice to Trustor at its address set forth in the first paragraph above the Recitals hereof at least ten (10) days prior to the sale or other event for which such notice is required. Any such sale may be held as part of and in conjunction with any foreclosure sale of the other properties and rights constituting the Pledged Property in order that the Pledged Property, including the Personal Property, may be sold as a single parcel if the Lender elects. The Trustor hereby agrees that if the Lender demands or attempts to take possession of the Personal Property or any portion thereof in exercise of its rights and remedies hereunder, the Trustor will promptly turn over and deliver possession thereof to the Lender, and the Trustor authorizes, to the extent the Trustor may now or hereafter lawfully grant such authority, the Lender, its employees and agents, and potential bidders or Borrowers to enter upon the Real Property or any other common area, residence, office, building or property where the Personal Property or any portion thereof may at the time be located (or believed to be located) and the Lender may (i) remove the same therefrom or render the same inoperable (with or without removal from such location); (ii) repair, operate, use or manage the Personal Property or any portion thereof; (iii) maintain, repair or store the Personal Property or any portion thereof; (iv) view, inspect and prepare the Personal Property or any portion thereof for sale, lease or disposition; (v) sell, lease, dispose of or consume the same or bid thereon; or (vi) incorporate the Personal Property or any portion thereof into the Real Property and sell, convey or transfer the same. The expenses of retaking, selling and otherwise disposing of the Personal Property, including reasonable attorneys' fees and legal expenses incurred in connection therewith, shall constitute additional Obligations hereunder and shall be payable upon demand, with interest thereon at the Default Rate from the date of demand until paid.

   5.1.3.    <u>Foreclosure Sale</u>. Lender may invoke the power of sale and any other remedies permitted by Idaho law or provided in this Security Instrument or in any other Loan Document. Trustor acknowledges that the power of sale granted in this Security Instrument may be exercised by Lender without prior judicial hearing. Lender shall be entitled to collect all reasonable out of pocket costs and expenses incurred in pursuing such remedies, including attorneys' fees, costs of documentary evidence, abstracts and title reports. If the power of sale is invoked, for any sale under the power of sale granted by this Security Instrument, Lender or Trustee shall execute a written notice of the occurrence of an Event of Default and of Lender's election to cause the Pledged Property to be sold and shall record such notice in each county in which the Pledged Property is located. Lender or Trustee shall mail notice of default in the manner provided by the laws of Idaho to Trustor and to such other persons as the laws of Idaho prescribe. Trustee shall give public notice of sale and shall sell the Pledged Property according to the laws of Idaho. Trustor acknowledges that the power of sale granted by this Security Instrument may be exercised by Lender without prior judicial hearing. Trustor has the right to bring an action to assert the non-existence of an Event of Default or any other defense of Trustor to acceleration and sale. Lender shall be entitled to collect all reasonable out of pocket costs and expenses incurred in pursuing such remedies, including reasonable attorneys' fees and costs of documentary evidence, abstracts

4818-6634-2472, v. 2

and title reports. Trustee may sell the Pledged Property at the time and place and under the terms designated in the notice of sale in one or more parcels. Trustee may postpone sale of all or any part of the Pledged Property by public announcement at the time and place of any previously scheduled sale in accordance with the laws of Idaho. Lender or Lender's designee may purchase the Pledged Property at any sale. If the Pledged Property includes several lots or parcels, Trustor has the right, under Idaho law, if present at the sale, to direct the order in which the Pledged Property shall be sold, and Trustee shall follow such directions. With respect to such lots or parcels, Lender in its discretion may elect to sell all of them as an entirety or may elect to sell a portion of such lots or parcels, in which case the lien of this Security Instrument shall remain in full force and effect with respect to the remaining lots or parcels in accordance with the laws of Idaho. The Pledged Property, real, personal and mixed, may be sold in one parcel. To the extent any of the Pledged Property sold by the Trustee is personal property, then Trustee shall be acting as the agent of the Lender in selling such Pledged Property. Any person permitted by law, including Lender, may purchase such Pledged Property at any sale, and Lender may credit its bid price against the amounts due to Lender under the Loan Documents in lieu of the payment of cash. Upon any sale, Trustee will execute and deliver to the Borrower or Borrowers a deed or deeds conveying the Pledged Property sold, but without any covenant or warranty, express or implied, and the recitals in the Trustee's deed showing that the sale was conducted in compliance with all the requirements of law shall be prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide Borrowers and encumbrancers for value.

      5.1.4. <u>Appointment of Receiver</u>. Lender shall, as a matter of right, without notice and without giving bond to Trustor or anyone claiming by, under or through Trustor, and without regard to the solvency or insolvency of Trustor or the then value of the Pledged Property, be entitled to have a receiver appointed pursuant to applicable law of all or any part of the Pledged Property, the Rents and the Room Revenues, with such power as the court making such appointment shall confer, and Trustor hereby consents to the appointment of such receiver and shall not oppose any such appointment. Any such receiver may, to the extent permitted under applicable law, without notice, enter upon and take possession of the Pledged Property or any part thereof by summary proceedings, ejectment or otherwise, and may remove Trustor or other persons and any and all property therefrom, and may hold, operate and manage the same and receive all Rents and Room Revenues accruing with respect thereto or any part thereof, whether during the pendency of any foreclosure or until any right of redemption shall expire or otherwise. Trustor agrees to promptly deliver to any such receiver all Leases, Rents, Room Revenues, documents, financial data and other information requested by such receiver in connection with the Pledged Property and, without limiting the foregoing, Trustor hereby authorizes Lender to deliver to any such receiver any or all of the Leases, Rents, Room Revenues, documents, data and information in Lender's possession relating to the Pledged Property.

4818-6634-2472, v. 2

5.1.5.    <u>Taking Possession of, Collecting Rents, Collecting Room Revenues, Etc.</u>.  Upon demand by Lender, Trustor shall surrender to Lender and Lender may enter and take possession of the Pledged Property or any part thereof personally, by its agent or attorneys or be placed in possession pursuant to court order as "mortgagee in possession" or receiver as provided under applicable law, and Lender, in its discretion, personally, by its agents or attorneys or pursuant to court order as "mortgagee in possession" or receiver as provided under applicable law may enter upon and take and maintain possession of all or any part of the Pledged Property, together with all documents, books, records, papers, and accounts of Trustor relating thereto, and may exclude Trustor and any agents and servants thereof wholly therefrom and may, on behalf of Trustor, or in its own name as Lender and under the powers herein granted:

(a)    hold, operate, manage and control all or any part of the Pledged Property and conduct the business, if any, thereof, either personally or by its agents, with full power to use such measures, legal or equitable, as in its discretion may be deemed proper or necessary to enforce the payment or security of the Rents or Room Revenues of the Pledged Property, including without limitation actions for recovery of rent, actions in forcible detainer, and actions in distress for rent, all without notice to Trustor;

(b)    cancel or terminate any Lease or sublease of all or any part of the Pledged Property for any cause or on any ground that would entitle Trustor to cancel the same;

(c)    elect to disaffirm any Lease or sublease of all or any part of the Pledged Property made subsequent to this Security Instrument without Lender's prior written consent;

(d)    extend or modify any then-existing Leases and make new Leases of all or any part of the Pledged Property, which extensions, modifications, and new Leases may provide for terms to expire, or for options to lessees to extend or renew terms to expire, beyond the Maturity Date and the issuance of a deed or deeds to a Borrower or Borrowers at a foreclosure sale, it being understood and agreed that any such Leases, and the options or other such provisions to be contained therein, shall be binding upon Trustor, all persons whose interests in the Pledged Property are subject to the lien hereof, and the Borrower or Borrowers at any foreclosure sale, notwithstanding any redemption from sale, discharge of the Obligations, satisfaction of any foreclosure decree, or issuance of any certificate of sale or deed to any such Borrower;

(e)    make all necessary or proper repairs, decoration renewals, replacements, alterations, additions, betterments, and improvements in connection with the Pledged Property as may seem judicious to Lender, to insure and reinsure the Pledged Property and all risks incidental to Lender's possession, operation and management thereof, and to receive all Rents and Room Revenues therefrom;

(f)     apply the net income, after allowing a reasonable fee for the collection thereof and for the management of the Pledged Property, to the payment of taxes, premiums and other charges applicable to the Pledged Property, or in reduction of the Obligations in such order and manner as Lender shall select; and

(g)     receive and collect the Rents and Room Revenues personally or through a receiver so long as an Event of Default shall exist and during the pendency of any foreclosure proceedings and during any redemption period, and the Trustor agrees to consent to a receiver if this is believed necessary or desirable by the Lender to enforce its rights under this subsection.   The collection of Rents or Room Revenues by the Lender shall in no way waive the right of the Lender to foreclose this Security Instrument in the event of any said Event of Default

(h)     Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession" in the absence of the actual taking of possession of the Pledged Property.  The right to enter and take possession of the Pledged Property and use any Personal Property therein, to manage, operate, conserve and improve the same, and to collect the Rents and Room Revenues, shall be in addition to all other rights or remedies of Lender hereunder or afforded by law, and may be exercised concurrently therewith or independently thereof.   The expenses (including any receiver's fees, reasonable counsel fees, reasonable out of pocket costs and agent's compensation) incurred pursuant to the powers herein contained shall be secured hereby which expenses Trustor promises to pay upon demand together with interest thereon at the Default Rate from the date of demand until paid.   Lender shall not be liable to account to Trustor for any action taken pursuant hereto other than to account for any Rents or Room Revenues actually received by Lender.  Without taking possession of the Pledged Property, Lender may, in the event the Pledged Property becomes vacant or is abandoned, take such steps as it deems appropriate to protect and secure the Pledged Property (including hiring watchmen therefor) and all reasonable out of pocket costs incurred in so doing shall constitute additional Obligations payable upon demand with interest thereon at the Default Rate from the date of demand until paid.

      5.1.6.   <u>Exercise Other Rights and Remedies</u>.   To exercise or invoke any and all other rights and remedies as may be available to Lender now or hereafter at law or in equity.

      5.1.7.   <u>Indemnity</u>.   The Trustor hereby agrees to indemnify, defend, protect and hold harmless the Lender and its employees, officers and agents from and against any and all liabilities, claims and obligations which may be incurred, asserted or imposed upon them or any of them as a result of or in connection with any use, operation, lease or consumption of any of the Pledged Property, or any part thereof, or as a result of the Lender seeking to obtain performance of any of the obligations due with respect to the Pledged Property, except from such liabilities, claims or obligations as result from the gross negligence or intentional misconduct of the Lender, its employees, officers or agents.

Exhibit B, Page 15

5.1.8.     To the extent permitted by law, no action taken, or right or remedy invoked, by Lender under this Section 5, including the appointment of a receiver for the Pledged Property, or the entry into possession of the Pledged Property, or any part thereof, by such receiver, or otherwise, shall be deemed to make Lender a "mortgagee in possession" or otherwise responsible or liable in any manner with respect to the Pledged Property, or the use, occupancy, enjoyment or operation of all or any part thereof.  In no event shall Lender be required to accept a cure of any default beyond the applicable grace, notice and cure periods provided in the Loan Documents, if any, notwithstanding any statement or provision to the effect that rights or remedies are available while an Event of Default "exists", "continues" or is "outstanding", or during the "existence" or "continuation" of an Event of Default (or any similar statement or provision) in any of the Loan Documents, or anything else in the Loan Documents.

5.2.     **Payment of Costs, Expenses and Attorneys' Fees.**  All reasonable out of pocket costs and expenses incurred by Lender pursuant to Section 5 (including court costs and reasonable attorneys' fees and costs of outside counsel, whether or not incurred in litigation and whether or not foreclosure is concluded, including, without limitation, reasonable attorneys' fees and costs of outside counsel incurred in connection with any judicial or nonjudicial foreclosure of this Security Instrument or the other Loan Documents, or in connection with both judicial and nonjudicial foreclosure, if Lender shall elect to pursue each such remedy whether concurrently or independently and reasonable attorneys' fees and reasonable out of pocket costs of outside counsel of Lender) shall be secured by this Security Instrument and shall bear interest at the Default Rate, from the date of expenditure until such sums have been paid.  Lender shall be entitled to bid, at any sale of the Pledged Property held pursuant to Section 5.1.2 above, the amount of all such reasonable out of pocket costs, expenses, and interest in addition to the amount of all Other Obligations by a credit bid as the equivalent of cash.

5.3.     **Protective Advances.**

5.3.1.     Advances, disbursements and expenditures made by Lender for the following purposes after the occurrence and during the continuance of an Event of Default, whether before and during a foreclosure, and at any time prior to sale, and, where applicable, after sale, and during the pendency of any related proceedings, for the following purposes, shall, in addition to those otherwise authorized by this Security Instrument, constitute "Protective Advances":

(a)     all advances by Lender in accordance with the terms of this Security Instrument to:  (A) preserve or maintain, repair, restore or rebuild the Improvements upon the Pledged Property; (B) preserve the lien of this Security Instrument or the priority thereof; or (C) enforce this Security Instrument;

(b)     payments by Lender of:  (i) when due, installments of principal, interest or other obligations; (ii) when due, installments of real estate taxes and assessments, general and special and all other taxes and assessments of any kind or nature whatsoever which are assessed or imposed upon the mortgaged real estate or any part thereof; (iii) other obligations

authorized by this Security Instrument; or (iv) any other amounts in connection with other liens, encumbrances or interests reasonably necessary to preserve the status of Lender as holder of a first priority lien on the Real Property;

(c)     advances by Lender in settlement or compromise of any claims asserted by claimants under senior mortgages or any other prior liens;

(d)     reasonable attorneys' fees and other reasonable out of pocket costs incurred: (i) in connection with the foreclosure of this Security Instrument; (ii) in connection with any action, suit or proceeding brought by or against the Lender for the enforcement of this Security Instrument or arising from the interest of the Lender hereunder; or (iii) in the preparation for the commencement or defense of any such foreclosure or other action;

(e)     advances of any amount required to make up a deficiency in deposits for installments of taxes and assessments and insurance premiums as may be authorized by this Security Instrument;

(f)     expenses incurred and expenditures made by Lender for any one or more of the following: (i) premiums for casualty and liability insurance paid by Lender whether or not Lender or a receiver is in possession, if reasonably required, in reasonable amounts, and all renewals thereof; (ii) repair or restoration of damage or destruction in excess of available insurance proceeds or condemnation awards; (iii) payments required or deemed by Lender to be for the benefit of the Pledged Property under any grant or declaration of easement, easement agreement, agreement with any adjoining land owners or instruments creating covenants or restrictions for the benefit of or affecting the mortgaged real estate; (iv) shared or common expense assessments payable to any association or corporation in which the owner of the mortgaged real estate is a member in any way affecting the mortgaged real estate; or (v) pursuant to any lease or other agreement for occupancy of the mortgaged real estate;

5.3.2.     All Protective Advances shall be additional Obligations, and shall become immediately due and payable upon demand and with interest thereon from the date of the demand until paid at the Default Rate.

5.3.3.     This Security Instrument shall be a lien for all Protective Advances as to subsequent Borrowers and judgment creditors from the time this Security Instrument is recorded.

5.3.4.     All Protective Advances shall apply to and be included in:

(a)     determination of the amount of the Obligations at any time;

(b)     the Indebtedness found due and owing to the Lender in the judgment of foreclosure and any subsequent supplemental judgments, orders, adjudications or findings by the court of any additional Indebtedness becoming due after such entry of judgment, it being agreed that in any foreclosure judgment, the court may reserve jurisdiction for such purpose;

4818-6634-2472, v. 2

           (c)      application of income in the hands of any receiver or Lender in possession; and

           (d)      computation of any deficiency judgment pursuant to applicable law.

5.4.    **Remedies Cumulative; No Waiver.**  All rights and remedies of Lender hereunder and under the other Loan Documents are cumulative and not alternative, and are in addition to all rights and remedies otherwise provided by law, and any or all of such rights and remedies shall be concurrent and may be pursued singly, successively or together against Trustor, the Borrowers, any other Borrower Party, the Pledged Property, any other collateral securing the Obligations, or any other Persons who are, or may become liable for all or any part of the Obligations, and any other funds, property or security held by Lender for the payment hereof, or otherwise, at the sole and absolute discretion of Lender.  No exercise of any right or remedy by Lender shall constitute a waiver of any other right or remedy.  No delay or omission by Lender to exercise any right, power or remedy hereunder shall impair any such right or remedy, or be construed as a waiver of any Event of Default, or any acquiescence therein.  Without limiting the generality of the foregoing, Trustor agrees that if an Event of Default is continuing, (i) to the extent permitted by applicable law, Lender is not subject to any "one action," "anti-deficiency" or "election of remedies" law or rule, and (ii) all liens and other rights, remedies or privileges provided to Lender shall remain in full force and effect until Lender has exhausted all of its remedies against the Pledged Property, this Security Instrument has been foreclosed, or the Pledged Property has been sold and/or otherwise realized upon in satisfaction of the Indebtedness or the Indebtedness has been paid in full, whichever is later.  Nothing contained herein or in any other Loan Document shall be construed as requiring Lender to resort to any particular portion of the Pledged Property for the satisfaction of any of the Obligations in preference or priority to any other portion of the Pledged Property, and Lender may seek satisfaction out of the entire Pledged Property or any part thereof, in its sole and absolute discretion, in respect of the Obligations.  By accepting payment of any part of the Indebtedness after its due date or later performance of any Obligation, Lender shall not waive its right against any Person obligated directly or indirectly under the Loan Documents or this Security Instrument, or on any Obligation, either to require prompt payment when due of all other Indebtedness or to declare an Event of Default for failure to make such prompt payment or render such performance; and Lender's acceptance of partial payment of any portion of the Indebtedness after its due date (which may be applied to such outstanding payment obligations as Lender may elect, notwithstanding Trustor's instructions to the contrary), or acceptance of partial performance of any Obligation in default, shall not cure such payment failure or default, or affect any notice of an Event of Default or sale heretofore given or recorded, unless such notice is expressly revoked in writing by Lender.

5.5.    **Releases, Extensions, Modifications and Additional Security.**  Without affecting the liability of any Person for payment of the Indebtedness, or the lien or priority of this Security Instrument or any other Loan Document upon the Pledged Property, Lender may, in its sole and absolute discretion, from time to time, with or

4818-6634-2472, v. 2

without notice, do one or more of the following: release the liability of any person for the payment of all or any portion of the Indebtedness; make any agreement or take any action extending the maturity or otherwise altering the terms or increasing the amount of all or any portion of the Indebtedness; and accept additional security, or release all or a portion of the Pledged Property and other security held to secure the Indebtedness. If Lender holds any other or additional security for the payment of the Indebtedness or performance of any Other Obligation, then any sale or foreclosure of such security upon any Event of Default, in the sole discretion of Lender, may be prior to, subsequent to, or contemporaneous with, any sale or foreclosure hereunder and any property in which Lender holds a security interest may be sold as a unit with the Pledged Property.

     5.6.   **Waiver of Right to Redeem - Waiver of Appraisement, Valuation, Etc.** To the extent permitted by law, Trustor waives (i) the benefit of all present or future laws providing for any appraisement before sale of any portion of the Pledged Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the Indebtedness and marshalling in the event of foreclosure of the lien created by this Security Instrument, (iii) all rights and remedies which Trustor may have or be able to assert by reason of the laws of the State of Idaho pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Security Instrument or to any action brought to enforce the Notes or any other obligation secured by this Security Instrument, and (v) any rights, legal or equitable, to require marshalling of assets or to require upon foreclosure sales in a particular order. Lender shall have the right to determine the order in which any or all of the Pledged Property shall be subjected to the remedies provided by this Security Instrument. Lender shall have the right to determine the order in which any or all portions of the Indebtedness are satisfied from the proceeds realized upon the exercise of the remedies provided by this Security Instrument.

## 6.   MISCELLANEOUS.

     6.1.   **Notices.** All notices or other written communications hereunder shall be deemed to have been properly given (i) upon delivery if delivered in person, (ii) one (1) Business Day after having been deposited for overnight delivery with any reputable overnight courier service, (iii) three (3) Business Days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, or (iv) one (1) Business Day after delivery if sent by email, provided that the recipient has acknowledged receipt by telephone and that a carbon copy of such notice is sent simultaneously by the other methods provided in this Section. All notices or other written communications hereunder shall be addressed to the individuals at the addresses set forth below, or at such other address as such party may, at least ten (10) days in advance, designate by written notice to the other parties.

To Trustor:            C.A.R.S. Enterprises, Inc.
                      c/o Ryan W. Hawkes and Curtis D. Grieve
                      9393 Fairview Avenue

Boise, Idaho 83704

And

Ryan W. Hawkes
1450 E. Covey Run Ct.
Eagle, Idaho 83616

And

Curtis D. Grieve
623 N. Cove Colony Way
Eagle, Idaho 83616

To Lender:              DA Capital Investments, LLC
                        c/o Douglas R. Brasher
                        3059 S. Bear Claw Place
                        Meridian, ID 83642

To Trustee:             First American Title Company
                        738 South Bridge Way Place Suite 150
                        Eagle, ID 83616

6.2.    **Time of the Essence.**  Time is of the essence with respect to this Security Instrument and the other Loan Documents, and each representation, warranty, covenant and condition hereunder and thereunder.

6.3.    **Successors and Assigns.**  This Security Instrument and all provisions hereof shall be binding upon and enforceable against the Trustor and its assigns and other successors.  This Security Instrument and all provisions hereof shall inure to the benefit of the Lender, its successors and assigns and any holder or holders, from time to time, of the Obligations, or any interest therein.

6.4.    **Amendments.**  This Security Instrument may be amended at any time and from time to time only by an amendment in writing executed by Lender and Trustor.

6.5.    **Rules of Construction.**  When the identity of the parties or other circumstances make appropriate, the neuter gender shall include the feminine and masculine, and the singular number shall include the plural.  Specific enumeration of rights, powers and remedies of Lender and of acts which they may do and of acts Trustor must do or not do shall not exclude or limit the general.  The headings of each Section are for information and convenience and do not limit or construe the contents of any provision hereof.  The provisions of this Security Instrument shall be construed as a whole according to their common meaning, not strictly for or against any party and consistent with the provisions herein contained, in order to achieve the objectives and

Exhibit B, Page 20

purposes of these grants. The use in this Security Instrument (including any Exhibit hereto) of the words "including", "such as" or words of similar import when following any general term, statement or matter shall not be construed to limit such statement, term or matter to the specific items or matters, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of such statement, term or matter; the use herein of the words "costs" or "expenses" shall include the cost of title evidence and reasonable out of pocket fees and costs of attorneys for Lender (outside counsel); and the use herein of the word "prompt", or "immediately" in any form, or words of similar import, when used with reference to any notice required to be given or act to be undertaken by Trustor shall mean notice given or act performed not later than ten (10) days after the occurrence of the specified event for which notice or action is required, unless another time period is made expressly applicable. Unless otherwise specified, the words "hereof," "herein" and "hereunder" and words of similar import when used in this Security Instrument shall refer to this Security Instrument as a whole and not to any particular provision of this Security Instrument. If Trustor is composed of more than one person or entity, then the obligations of Trustor under this Security Instrument and under the other Loan Documents are joint and several; and each covenant, warranty, representation and agreement of Trustor hereunder and thereunder shall be deemed made by each such person or entity comprising Trustor, both individually and collectively.

6.6. **Severability.** If any term of this Security Instrument, or the application thereof to any person or circumstances, shall to any extent be invalid or unenforceable, the remainder of this Security Instrument, or the application of such term to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term of this Security Instrument shall be valid and enforceable to the fullest extent permitted by law.

6.7. **Substitute Trustee.** Lender, at Lender's option, may from time to time, by a written instrument, appoint a successor trustee, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the Pledged Property is situated, shall be conclusive proof of proper substitution of the successor trustee. The successor trustee shall, without conveyance of the Pledged Property, succeed to all the title, power and duties conferred upon the Trustee in this Security Instrument and by Idaho law. The instrument of substitution shall contain the name of the original Lender, Trustee and Trustor under this Security Instrument, the book and page where this Security Instrument is recorded, and the name and address of the successor trustee. If notice of default has been recorded, this power of substitution cannot be exercised until after the reasonable out of pocket costs, fees and expenses of the then acting Trustee have been paid to such Trustee, who shall endorse receipt of those costs, fees and expenses upon the instrument of substitution. The procedure provided for substitution of trustee in this Security Instrument shall govern to the exclusion of all other provisions for substitution, statutory or otherwise.

6.8. **Governing Law.** THIS SECURITY INSTRUMENT AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND

4818-6634-2472, v. 2

CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF IDAHO APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE (WITHOUT REGARD TO PRINCIPLES OF CONFLICT LAWS AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA).    TO THE FULLEST EXTENT PERMITTED BY LAW, TRUSTOR AND LENDER EACH HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS AGREEMENT.

6.9.    **Venue.**  Any legal suit, action or proceeding against Trustor arising out of or relating to this Security Instrument may at Lender's option be instituted in any federal or state court in or having jurisdiction with respect to Ada County, Idaho, and Trustor waives any objections which it may now or hereafter have based on venue and/or forum non conveniens of any such suit, action or proceeding, and Trustor hereby irrevocably submits to the jurisdiction of any such court in any suit, action or proceeding.  Nothing herein shall affect the right of Lender to serve process in any manner permitted by law or limit the right of Lender to bring proceedings against Trustor in any other court or jurisdiction that Lender may elect in its sole and absolute discretion, and Trustor waives any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding, and Trustor hereby irrevocably submits to the jurisdiction of any such court in any suit, action or proceeding.  Each of the parties hereto waives personal service of process and irrevocably consents to service of process in the manner provided for notices in Section 6.1 hereof.  Nothing in this Security Instrument will affect the right of any party to this Security Instrument to serve process in any other manner permitted by law.

6.10.  **Commingling of Funds.**  No sums collected or retained by Lender shall be deemed to be held in trust; and Lender may commingle any and all such funds or proceeds with its general assets and shall not be liable for the payment of any interest or other return thereon, except to the minimum extent required by law.

6.11.  **Late Charges.**  Trustor recognizes and acknowledges that any default on any payment, or portion thereof, due hereunder or to be made under any of the other Loan Documents, will result in losses and additional expenses to Lender for the loss of use of funds not timely received.  If for any reason Trustor fails to pay any interest or principal or any other sum required to be paid under this Security Instrument within five (5) days following the date such sums are due, excluding any payment due at maturity or upon acceleration, or fails to pay any amounts due under any of the other Loan Documents within five (5) days following the date such sums are due, then (in lieu of damages for any detriment proximately caused thereby which would be extremely difficult and impracticable to ascertain or compute) Trustor shall pay to Lender, in addition to any such delinquent payment, an amount equal to five percent (5%) of such delinquent payment ("Past Due Charge").  In addition, upon the Maturity Date and upon the occurrence and during the existence of an Event of Default (or upon any acceleration), interest shall automatically accrue hereunder, without notice to Borrower, at the Default Rate.  The Default Rate shall be calculated and due from the date that the

Default occurred which led to the Event of Default without regard to any grace or cure period as may be applicable, and shall be payable upon demand.

6.12. **Waiver of Jury Trial.** TRUSTOR AND, BY ITS ACCEPTANCE OF THIS SECURITY INSTRUMENT, LENDER, EACH HEREBY (i) EXPRESSLY, KNOWINGLY AND VOLUNTARILY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION ARISING UNDER THIS SECURITY INSTRUMENT OR IN ANY WAY CONNECTED WITH OR INCIDENTAL TO THE DEALINGS OF THE PARTIES WITH RESPECT TO ANY LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED THEREBY, WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, AND (ii) AGREES AND CONSENTS THAT ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS SECURITY INSTRUMENT MAY FILE AN ORIGINAL COUNTERPART OR A COPY OF THIS SECTION AS WRITTEN EVIDENCE OF THE CONSENTS OF THE PARTIES TO THE WAIVER OF THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY.

6.13. **Reconveyance.** Upon payment of the Indebtedness, Lender shall request Trustee to reconvey the Pledged Property and shall surrender this Security Instrument and the Note to Trustee. Trustee and Lender shall execute such documents reasonably required to complete such conveyance; provided that Trustee shall reconvey the Pledged Property without warranty to the person or persons legally entitled to the Pledged Property. Such person or persons shall pay Trustee's reasonable out of pocket costs incurred in so reconveying the Pledged Property, which payment obligation is secured hereby.

6.14. **Counterparts.** This Security Instrument may be executed in any number of counterparts, all of which shall be taken to be one and the same instrument, for the same effect as if all parties hereto had signed the same signature page. Receipt of an executed signature page to this Security Instrument by facsimile or other electronic transmission shall constitute effective delivery thereof.

[Remainder of page intentionally left blank;
Signatures on following pages]

4818-6634-2472, v. 2

**IN WITNESS WHEREOF,** Trustor has executed this Security Instrument on the day and year set forth above.

**TRUSTOR:**

C.A.R.S. ENTERPRISES, INC.
an Idaho limited liability company

By: _____
    Ryan W. Hawkes, President

STATE OF _Idaho_ )
                 : ss.
COUNTY OF _Ada_  )

On the _25_ day of May, 2017, Ryan W. Hawkes, as President of C.A.R.S. Enterprises, Inc., the signer of the foregoing instrument, personally appeared before me, a notary public in and for said State, and acknowledged to me that he executed the same.

_____
NOTARY PUBLIC

Commission expires
February 1, 2018

Exhibit B, Page 24

4818-6634-2472, v. 2

**IN WITNESS WHEREOF**, Trustor has executed this Security Instrument on the day and year set forth above.

<u>**TRUSTOR:**</u>

_____
Ryan W. Hawkes

_____
Suzann Hawkes, consent to mortgage

STATE OF _Idaho_      )
                            : ss.
COUNTY OF _Ada_    )

On the _25_ day of May, 2017, Ryan W. Hawkes and Suzann Hawkes, the signers of the foregoing instrument, personally appeared before me, a notary public in and for said State, and acknowledged to me that they executed the same.

_____
NOTARY PUBLIC

Commission expires
February 1, 2018

Exhibit B, Page 25

Exhibit B, Page 26

**IN WITNESS WHEREOF**, Trustor has executed this Security Instrument on the day and year set forth above.

**TRUSTOR:**

_____
Curtis D. Grieve

_____
Andrea M. Grieve/consent to mortgage

STATE OF Idaho )
              ) ss.:
COUNTY OF Ada )

On the 25 day of May, 2017, Curtis D. Grieve and Andrea M. Grieve, the signers of the foregoing instrument, personally appeared before me, a notary public in and for said State, and acknowledged to me that they executed the same.

_____
NOTARY PUBLIC

[Notary Seal: STATE OF IDAHO — NOTARY PUBLIC — RYAN W. HAWKES]

Commission expires: February 1, 2018

Exhibit A
Pledged Property

Lot 1:

Real property located in Canyon County, Idaho, commonly known as 2615 Cleveland
Boulevard, Caldwell, Idaho 83605, and described more particularly as follows:

The following described real property situated in Canyon County, State of Idaho, to wit:

This parcel is situated in the SW 1/4 of Section 28, Township 4 North, Range
3 West of the Boise Meridian, and is more particularly described as follows:

Commencing at the SW corner of said Section 28;

Thence N 0° 28' 00" W, along the West boundary of said Section 28, a
distance of 1824.21 feet to a point of the Northeasterly boundary of the right-
of-way for E. Cleveland Boulevard;

Thence S 46° 49' 00" E, along the Northeasterly boundary of E. Cleveland
Boulevard, a distance of 988.75 feet to the TRUE POINT OF BEGINNING;

Thence N 43° 11' 00" E, parallel with the Southeasterly boundary of the right-
of-way for S. 26th Avenue, a distance of 264.00 feet to a point on the
Southwesterly boundary of the right-of-way for Blaine Street;

Thence S 46° 49' 00" E, along the Southwesterly boundary of the right-of-way
for said Blaine Street, a distance of 136.51 feet;

Thence S 43° 11' 00" W, parallel with the Southeasterly boundary of the right-
of-way for said S. 26th Avenue, a distance of 264.00 feet to a point on the
Northeasterly boundary of the right-of-way for said E. Cleveland Boulevard;

Thence N 46° 49' 00" W, along the Northeasterly boundary of the right-of-way
for said E. Cleveland Boulevard, a distance of 136.51 feet to the TRUE
POINT OF BEGINNNING.

Said real property is more commonly known as: 2615 Cleveland Boulevard, Caldwell,
Idaho, 83605.

Property Tax Parcel Number: R35345-000

4818-6634-2472, v. 2

Lot 2:

Real property located in Ada County, Idaho, commonly known as 1450 E Covey Run Ct., Eagle, Idaho 83616, and more particularly described as follows:

LOT 14, BLOCK 44 OF BROOKWOOD SUBDIVISION NO. 10, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED AS INSTRUMENT NO. 104066870 IN BOOK 89 OF PLATS AT PAGES 10,263 THROUGH 10,266, RECORDS OF ADA COUNTY, IDAHO. SUBJECT TO RESTRICTIVE COVENANTS AND CONDITIONS RECORDED OCTOBER 30, 2001, INSTRUMENT NO. 100013379, RECORDS OF ADA COUNTY, IDAHO.

Property Tax Parcel Number: R1097050120


Lot 3:

Real property located in Ada county, Idaho, commonly known as 623 N. Cove Colony Way, Eagle, Idaho 83616, and more particularly described as follows:

LOT 2 IN BLOCK 3 OF THE COLONY SUBDIVISION, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN BOOK 79 OF PLATS AT PAGE(S) 8524 THROUGH 8527, RECORDS OF ADA COUNTY, IDAHO.

Property Tax Parcel Number: R1523650110

4818-6634-2472, v. 2